[No. D010802. Fourth Dist., Div. One. Feb. 22, 1991.]

EDWARD JACOB HINE, Cross-complainant and Appellant, v. JOHN DITTRICH et al., Cross-defendants and Respondents.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Gerald F. McGhee for Cross-complainant and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard and Janice Gay Gibbons as Amici Curiae on behalf on Cross-complainant and Appellant.

Gray, Cary, Ames & Frye, Marcelle E. Mihalia, John Allcock, Bryan Garrie and Michael C. Sullivan for Cross-defendants and Respondents.

**OPINION**

**WIENER, J.**—Cross-complainant Edward Jacob Hine appeals a summary judgment in favor of cross-defendants General Dynamics Corporation and John Dittrich. We affirm as to General Dynamics and reverse as to Dittrich.

## Factual and Procedural Background

*Facts*

Hine and Dittrich were machinists at General Dynamics. At best their relationship was stormy. According to the allegations in Hine's cross-complaint, Dittrich told other employees that Hine was chasing Dittrich's wife. Dittrich allegedly threatened Hine, approaching him with clenched fists. Dittrich bought a shotgun with the intent of sawing off the barrel so it could be concealed.

Dittrich's behavior disrupted his coworkers, culminating in General Dynamics transferring him to another shift on April 20, 1980. Dittrich responded by filing the underlying action on June 24, 1980, against Hine and others seeking damages for emotional distress.

Less than three months later on September 4, 1980, General Dynamics terminated Hine for insubordination because Hine disobeyed his supervisor and refused to attend a company meeting. Hine asserted the reason he failed to attend the meeting was that Dittrich would be there armed with his sawed-off shotgun.

Pursuant to the union's collective bargaining agreement Hine appealed his termination. At the arbitration hearing no evidence was presented of Dittrich's conduct toward Hine. The union explained there was a conflict of interest for one union member to testify against another. The testimony was limited to the events occurring on the day Hine was actually terminated. On April 24, 1981, the arbitrator found General Dynamics was justified in terminating Hine.

Five months later and three hundred seventy-eight days after his termination, Hine cross-complained against Dittrich for slander and emotional distress and against General Dynamics for negligently supervising Dittrich. Included in General Dynamics' responsive pleading was the affirmative defense that Hine's cross-complaint was not timely filed under Code of Civil Procedure section 340 providing for a one-year limitations period.

*Procedural History*

The judgment before us is not the first time General Dynamics prevailed in the trial court. Its initial summary judgment motion was granted on the ground the cross-complaint was barred by the one-year statute of limitations. On appeal, we reversed explaining there was a factual issue whether the arbitration required by the collective bargaining agreement prevented

Hine from suing General Dynamics before the grievance procedure was completed.

On remand General Dynamics again successfully moved for summary judgment on the basis that the allegations of the cross-complaint were predicated on the collective bargaining agreement and thus preempted by the Labor Management Relations Act, section 301 (29 U.S.C. § 185(a)). We again reversed, holding the claim of negligent supervision was beyond the scope of the collective bargaining agreement.

In the present summary judgment proceeding General Dynamics convinced the trial court that the cumulative effect of our previous decisions mandated a judgment in its favor. The second appellate decision resolved the dispositive issue in the first. In other words, although our second decision reversed the summary judgment, it meant the collective bargaining agreement did not preclude the filing of the cross-complaint and it was therefore barred by the statute of limitations.

Without hearing from Dittrich and without discussing its reasons, the court also granted Dittrich's summary judgment motion. Dittrich's motion was based in part on the fact that Hine had failed to bring his action to trial within five years as required by Code of Civil Procedure section 583.310.

## DISCUSSION

In a technical sense, Hine does not dispute the trial court's reading of the two previous appellate decisions as indicating his cross-complaint against General Dynamics was filed more than one year after the cause of action accrued. Rather, he argues the doctrine of equitable tolling should postpone the running of the statute of limitations. As to Dittrich, Hine contends the court erred because the tolling provisions of Code of Civil Procedure section 583.340 bring the case within the five-year statute. We discuss each of the summary judgments separately.

## I

### The Judgment as to General Dynamics

■ It is well established that in reviewing a trial court's decision to grant summary judgment, we analyze the correctness of the court's ruling and not its reasoning. As the Supreme Court has stated, "[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) As a result, and

because the legal landscape surrounding this case has changed since the trial court's ruling, we asked the parties to comment on the applicability of the Supreme Court's recent decision in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] restricting a dismissed employee's ability to bring a tort action alleging wrongful discharge.[2]   ▆▆ The relationship between Hine's firing and his "negligent supervision" claim against General Dynamics caused us to question whether any part of the pleaded action survives *Foley*.

The California Supreme Court held in *Foley* that an employee could no longer recover tort damages for breach of the covenant of good faith and fair dealing. (*Id.* at p. 700.) The court explained the purpose of the covenant is to secure the parties' rights under the contract and thus a breach of contract action is generally the appropriate remedy. (*Id.* at p. 690.) The majority opinion acknowledges that special situations exist where public policy justifies a tort remedy, as in insurance cases which arguably involve a "special relationship" between the insured and insurer. (*Id.* at p. 692.) The court concluded, however, that the employment relationship is an ordinary contractual relationship and tort remedies are not warranted for breach of the implied covenant "in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper terminations already afforded employees."[3] (*Id.* at p. 693.)

The gist of Hine's claim here is that General Dynamics had a responsibility to provide for the welfare of its employees while they were working and that it knew or should have known that Dittrich was harassing Hine as well as other employees. Hine alleges that General Dynamics could have prevented Dittrich from harassing Hine but failed to do so.

If this were the extent of Hine's allegations, the applicability and effect of *Foley* would not pose a major concern. *Foley* represents a judgment call that where an employee suffers damage as a result of discharge from employment, recovery should be limited. Clearly an employee who has never been discharged could, irrespective of *Foley*, claim damages from an employer whose negligent supervision of a fellow employee caused the first employee to be injured.[4]

---

[2] In *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059], the court held *Foley* was retroactive to all cases not final on January 30, 1989. Thus, *Foley* applies to this case.

[3] *Foley* went on to limit tort recovery in the employment discharge context to an employee whose firing violated a substantial public policy. (*Id.* at p. 665.) According to the court, tort damages are only proper where the discharge "affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee." (*Id.* at p. 669.)

[4] This comment is not intended to suggest that an employee could bring a *tort action* against his employer under such circumstances. The exclusivity of the workers' compensa-

Here, however, Hine specifically alleges he suffered no injury until he was discharged.[5] Accordingly, General Dynamics' alleged negligence was only a contributing cause of its intentional decision to terminate Hine. Hine can no more turn a contractual wrongful discharge action into a negligent supervision tort claim than could a terminated employee plead negligence simply because the employer negligently failed to follow prescribed procedures before the firing. (See *Gray* v. *Superior Court* (1986) 181 Cal.App.3d 813, 819 [226 Cal.Rptr. 570], disapproved on other grounds in *Foley, supra*, 47 Cal.3d at p. 688.) Since Hine suffered no injury independent of his termination, we read *Foley* as precluding Hine's tort action.

Other courts addressing analogous issues have reached similar conclusions. For example in *Hartford Fire Ins. Co.* v. *Karavan Enterprises, Inc.* (N.D.Cal. 1987) 659 F.Supp. 1077, an employer faced with a discharged employee's wrongful termination suit sought to impose the costs of defense on its insurance carrier under a policy which limited coverage to damages caused by "an 'accident . . . which results in bodily injury or property damage neither expected nor intended by the insured.'" (*Id.* at p. 1081, quoting *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537-538 [226 Cal.Rptr. 435].) The employer pointed to allegations in the plaintiff's complaint that it *negligently* failed to follow disciplinary procedures. (*Id.* at p. 1080.) The court rejected the employer's argument, explaining that "negligence claims based on the discharge fall within the ambit of the claim for wrongful discharge. [Citation.] Claims for negligent conduct must be treated analytically as an integral part of the assertedly wrongful discharge." (*Id.* at p. 1081; see also *St. Paul Mercury Ins. Co.* v. *Ralee Engineering Co.* (9th Cir. 1986) 804 F.2d 520, 522.) Similarly in *American Guar. & Liability* v. *Vista Medical Supply* (N.D. Cal. 1988) 699 F.Supp. 787, the court concluded an employee's cause of action for negligent misrepresentation based on the employer's representation she would have job security was part and parcel of the concurrent wrongful discharge claim because "it ar[o]se out of [the employer's] intentional act of discharging her." (*Id.* at p. 791.)

While the discharge of an employee may take little more than the time necessary to say, "You're fired," the circumstances leading up to a

tion remedy (see Lab. Code, § 3601) might preclude a civil suit in some or all cases. (See generally, *Shoemaker* v. *Meyers* (1990) 52 Cal.3d 1, 17-20 [276 Cal Rptr. 303, 801 P.2d 1054]; *Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212, 224-225 [239 Cal.Rptr. 470].) We only observe that an employee may suffer injury as a result of negligent supervision without being discharged.

[5] According to Hine's cross-complaint, "[O]n or about September 4, 1980, [Hine] became emotionally distraught, depressed and introverted to the point where [he] was no longer able to comply with the mandates of Cross-Defendant GENERAL DYNAMICS and as a result thereof, [Hine] was, on or about September 4, 1980, discharged from his employment with Cross-Defendant GENERAL DYNAMICS for insubordination. Said distress, depression and introversion lay dormant and slumbering in [Hine] and did not manifest itself in a manner injurious to [Hine] until on or about September 4, 1980."

termination decision are rarely instantaneous. During that often lengthy series of precursor events, it can frequently be alleged that the employer acted unreasonably or "should have" done something different. Such allegations do not establish a tort of negligence independent of the discharge itself. As long as the alleged injury would not have occurred but for the employment termination, *Foley* indicates that the employee is generally limited to a contractual remedy.

*Foley*'s decision to limit remedies envisions that an employee may recover *contractual* damages for a wrongful termination. Here, however, Hine never attempted to plead the express or implied terms of any contract he claims was breached, presumably because such a claim would be preempted under federal law. (See *ante*, p. 62.) Accordingly, Hine is without recourse and summary judgment was properly granted.

II*

. . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment as to General Dynamics is affirmed; the judgment as to Dittrich is reversed.

Kremer, P. J., and Work, J., concurred.

On March 25, 1991, the opinion was modified to read as printed above.

---

* See footnote, *ante*, page 59.